SOUTHERN MARYLAND OIL COMPA-
NY, Inc., a body corporate of the State
of Maryland, to its own use and to the
use of Insurance Company of North
America, a body corporate of the State
of Pennsylvania,

v.

The TEXAS COMPANY, a body corporate
of the State of Delaware.

Civ. No. 13215.

United States District Court
D. Maryland.

March 30, 1962.

M. King Hill, Jr., Herbert F. Murray,
and Smith, Somerville & Case, Balti-
more, Md., for plaintiffs.

Michael P. Crocker and E. Clinton
Bamberger, Jr., Baltimore, Md., for de-
fendant.

NORTHROP, District Judge.

This case is before the court for a
ruling on a motion to dismiss, filed by
the defendant, The Texas Company.
The sole question raised by this motion
is whether or not Southern Maryland

Oil Company, Inc.'s action is barred by limitations.

The facts—as, for the time being, we must take them—are set forth in a two count complaint as follows: On or about November 28, 1957, and prior thereto, Southern Maryland purchased kerosene, in large volume, from Texas. This kerosene was delivered to the plaintiff from the defendant's storage tanks in Baltimore and carried, in its original condition, to the plaintiff's storage tanks in La Plata, Maryland. It subsequently was sold by Southern Maryland to one J. Earl Hill and his wife, Viola Hill, for resale to the general public. This fuel was resold specifically to two families: the Smothers and the Briscoes. Unfortunately, in each household the kerosene, because it contained gasoline, exploded and caused injuries to some of the members of these families. In two instances these injuries were fatal; the Briscoes' daughter died on December 29, 1957, and the Smothers' daughter died on December 9, 1957. It is alleged that the contamination of the kerosene was due to the negligence of Texas.

As a consequence of these tragic events, suits sounding in tort later were filed by the two families in the Circuit Court for Charles County, naming as defendants the Hills, Southern Maryland, and Texas. These actions, five in number, were settled by Southern Maryland and its insurer, the use-plaintiff, in the aggregate sum of $26,000.00, allegedly a fair and reasonable amount. This was on December 20, 1960. At the same time and in return for its payments, Southern Maryland secured written releases from the various plaintiffs in the compromised cases; these releases released not only Southern Maryland but also Texas, the Hills, and all other persons who may have been liable for the injuries alleged in the several complaints. Texas refused to participate in the negotiations leading up to the settlements or to contribute financially to the settlements themselves, taking the position that it was not liable to anyone in the matter.

The present suit was instituted on August 8, 1961. Thus, every event related above, with the bare exception of the settlements, occurred more than three years prior thereto. It is in reliance upon this that Texas has filed its motion to dismiss, in support of which motion it is urged that the limitations period has run against the plaintiffs' claim. All parties agree that the law of Maryland is applicable to this action, including the pending motion, and that the pertinent limitations period is three years. Annotated Code of Maryland, Art. 57, § 1 (1957 ed.). The issue, then is a most narrow one: When did limitations begin to run?

Before proceeding directly to this issue, it is necessary to summarize briefly the present complaint. As has been stated, the complaint is in two counts. Under the first count, constructed upon a contractual foundation, the plaintiffs allege a breach of warranty and seek to recover in full the amounts paid in the various settlements. The second count, based on a negligence theory, prays for alternative relief: (1) a full indemnification; or (2) the defendant's pro rata share of the settlement figures. The second or alternative remedy sought under this count is based upon the Uniform Contribution Among Tortfeasors Act. Annotated Code of Maryland, Art. 50, § 16 et seq. (1957 ed.).

■ The first count merits little discussion, in view of Judge Chesnut's erudite decision in New Amsterdam Casualty Co. v. Baker, 74 F.Supp. 809 (D.Md.1947). Counsel on both sides agree that the Baker case is determinative of the issues presented by this count and that, under Baker, this part of the complaint is time-barred.

It is the contention of Texas that the Baker case applies with equal force to the second count. We cannot agree with this position, for that case is readily distinguishable. A careful reading of Judge Chesnut's opinion in Baker demonstrates clearly that it deals with the tolling of limitations only in the instance of an action mounted upon the doctrine

of implied warranty. The question of the application of the statute to suits for contribution or indemnification was not before Judge Chesnut in the Baker case; nor is the language of his decision sufficiently broad to encompass such a situation. Of course, we are not the first to arrive at this conclusion; not long ago, Judge Watkins of this court also had occasion to interpret the Baker decision and was of the same mind. See Northwest Airlines v. Glenn L. Martin Co., 161 F.Supp. 452 (D.Md.1958). The logic and correctness of his careful and straightforward analysis seem unassailable.

■ The difficulty with the position taken by Texas is that it fails to distinguish a simple negligence action from one for indemnity or contribution based on negligence. Indeed, Texas' argument is that no distinction can be made. It urges that the statute of limitations "begins to run, regardless of the form of action, whether in *case* or *assumpsit*, from the time of the negligence or breach of duty." Hahn v. Claybrook, 130 Md. 179, at p. 183, 100 A. 83, 85, L.R.A.1917C, 1169 (1917). Under Maryland law, this proposition undoubtedly is correct abstractly, but the question is one of applying the rule to the instant case. In Hahn v. Claybrook, supra, the Court of Appeals recognized that the time when a breach of duty occurs is dependent upon the nature of that duty. The Court said (at p. 183, 100 A. at p. 84):

"A line of demarcation exists, however, between actions based upon the violation of some contractual right or duty and those based on the invasion of some other legal right or brought to recover conse-quential damages resulting from defendant's negligence or wrongdoing independent of any contractual relation. In the latter class of cases the right of action accrues and the statute begins to run either when plaintiff's legal rights have been violated or when actual damage results from defendant's act, according to whether the act of defendant is or is not actionable *per se.*"

So, while the tolling of the statute is not contingent upon the form of the action, it is contingent upon the nature of the duty breached and the nature of the right asserted.

Hahn and the other similar cases [1] cited by Texas all stand for the same proposition: Despite the fact that *consequential* damage is either not incurred or not discovered until a time otherwise subsequent to the running of limitations, the statute nonetheless runs from the moment there is a breach of duty. However, in not one of these cases was relief sought under an indemnification or contribution theory.[2] Their *ratio decidendi* is predicated upon a configuration of circumstances entirely different from those now before this court. The Hahn case readily demonstrates this. That was a malpractice action, instituted in 1915, wherein the plaintiff-patient alleged that the defendant-doctor was professionally negligent, between the years 1904 and 1910, in that he prescribed a drug which, when taken in the ordered doses, produced a dermatological disease. Although the drug produced some peculiar and noticeable effects as early as 1908, these effects did not become serious and permanent until 1913. The Court of Appeals of Maryland ruled that the plaintiff's action was barred by lim-

1. Wilcox v. Plummer, 4 Pet. 172, 29 U.S. 172, 7 L.Ed. 821 (1830); Pickett v. Aglinsky, 110 F.2d 628 (4th Cir. 1940); Muskin Shoe Co. v. United Shoe Machinery Corp., 167 F.Supp. 106 (D.Md. 1958); West v. Board of Education, 165 F.Supp. 382 (D.Md.1958).

2. In Northwest Airlines v. Glenn L. Martin Co., supra, at p. 459, n. 2, Judge Watkins pointed out that his decision that limitations had not run was not inconsistent with Hahn v. Claybrook, supra. Though his opinion is not explicit on this point, it is reasonably clear that he, too, felt that the Hahn case was distinguishable from that before him on the grounds now being discussed.

itations; however, it held that the running of the statute commenced, not from the date of the first prescription, but from the time when the first trivial injuries were noted.

Unlike the Hahn case, the rights presently asserted did not accrue or fully ripen until the consequential damages were incurred, that is, until the date of the settlements. It well may be true that, prior to that time, other rights had accrued to Southern Maryland, for such things as the loss it might have sustained because of the unsaleable condition of the kerosene and the cost of flushing out its trucks and tanks. But, these damages are not sought here. If they were sought, they could be recovered only in an action for negligence or breach of warranty, and each of these actions now is barred by limitations.

· [3–5] Unlike the Hahn case, the rights presently asserted are not the same rights that the plaintiff successfully could have prosecuted to judgment prior to the settlements, when the substantial damages were incurred. Although the present action is contingent upon tort liability, it is not brought in tort. Tort liability in negligence cases springs from the duty to use due care. On the other hand, the right to indemnification springs from an implied contract, under which the primary or principal wrongdoer is obliged to respond for all the damages; and, the right to contribution is a statutory creation, resting on the principle that, when the parties stand in *aequali jure*, the law requires all to contribute equally to the discharge of the common liability. 2 Williston, Contracts, § 345, at p. 767 (3rd ed. 1959). Thus, we have here the assertion of alleged rights that do not spring directly or solely from the act of negligence. Rather, these are derivative rights, which remained inchoate and upon which no judgment could have been obtained until after the various settlements or, had the

primary suits been resolved differently, until the claimants there had obtained judgments which had been satisfied. Hassett v. Modern Maid Packers, Inc., 23 F.R.D. 661 (D.Md.1959); Keitz v. National Paving Co., 214 Md. 479, 134 A.2d 296, 136 A.2d 229 (1957); O'Keefe v. Baltimore Transit Co., 201 Md. 345, 94 A.2d 26 (1953); Baltimore Transit Co. v. State, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460 (1944); Annotated Code of Maryland, Art. 50, § 17(b) (1957 ed.).

The injury for which redress is now being sought did not occur prior to the settlements. Before the settlements, Southern Maryland had incurred no damage, had sustained no injury, and had suffered the breach of no duty owed it that would have generated the specific rights now asserted.

■ The present issue clearly is to be decided by that line of decisions which acknowledges that an action for indemnification or contribution does not accrue until payment has been made.

It has long been held in Maryland in contract suretyship cases and in contractual indemnity cases, that the right to recover either indemnity or contribution does not accrue until payment has been made, and that payment is a condition precedent to the right of action. Cook v. Lincoln Amusement Co., Daily Record, November 24, 1952.[3]

There is no plausible reason why an indemnity action based upon negligence should accrue any earlier than an indemnity action based upon contract. Nor is there a plausible reason why any action for contribution should accrue before an action for indemnification of whatever variety, contract or tort. No case has been decided in the courts of Maryland that would suggest such distinctions. To the contrary, all who have had occasion to consider the matter have agreed that the rights both to indemnification and to contribution, whether based on

---

3. Judge Carter, of the Supreme Bench of Baltimore City, decided the Cook case. He had before him there the precise question now before this court and reached the same result.

contract or tort, accrue at the time of payment and not before. O'Keefe v. Baltimore Transit Co., supra, 201 Md. at p. 351,[4] 94 A.2d at p. 28; Associated Transport v. Bonoumo, 191 Md. 442, at p. 447, 62 A.2d 281 (1948); Rosenthal v. Heft, 159 Md. 302, 150 A. 850 (1930); Brady v. Brady, 110 Md. 656, 73 A. 567 (1909); Cook v. Lincoln Amusement Co., supra; Allen, "Joint Tortfeasors, Contribution and Indemnity", Daily Record, June 7, 1948.[5]

■ Of course, Texas has denied this, arguing that the running of the statute can be deferred only if there existed some "insuperable barrier" to the plaintiff's assertion of his rights within the time allowed. In support of this proposition, the defendant has cited the case of Weaver v. Leiman, 52 Md. 708 (1880), a case no more factually analogous to this than Hahn v. Claybrook, supra. In the Weaver case, the Court of Appeals said (at p. 718):

> In short, we find nothing in any, or all of these objections, combined, to affect the running of limitations. Mere doubt as to the right, or difficulty in the way of its assertion, will not do. Apart from the savings and disabilities expressed in the statute itself, there must, in order to defeat its operation, be some insuperable barrier, or some certain and well defined exception clearly established by judicial authority.

In urging the applicability of this doctrine, Texas has suggested that three separate and distinct actions were available to Southern Maryland prior to the settlements: (1) an immediate action for declaratory judgment under the Uniform Declaratory Judgments Act, Annotated Code of Maryland, Art. 31A, § 1 et seq. (1957 ed.); (2) an immediate action for negligence; and (3) a cross-claim against the co-defendant Texas in the various Charles County suits under the Maryland Rules of Procedure, Rule 314 (1957 ed.). To this list one might add a fourth cause of action for breach of warranty.

It can be conceded that there was no "insuperable barrier" that prevented Southern Maryland from instituting suit at an earlier date. However, while these claims could have been asserted long before the institution of the present action, Southern Maryland could not have had a judgment based on the settlement figures until these amounts actually were paid out. Annotated Code of Maryland, Art. 50, § 17(b) (1957 ed.). In this sense an "insuperable barrier" did exist, and this court is reluctant to punish a litigant for the failure to press his claim at an earlier date where, had he done so, he would not have been entitled to a judgment. Even if there were no "insuperable barrier" this case comes within the second qualification to the rule laid down in Weaver v. Leiman, supra. There is "some certain and well defined exception clearly established by judicial authority" that "a right of contribution does not accrue before payment." Associated Transport v. Bonoumo, supra, at p. 447. Also, O'Keefe v. Baltimore Transit Co., supra; Brady v. Brady, supra; Cook v. Lincoln Amusement Co., supra; Allen, "Joint Tortfeasors, Contribution, and Indemnity" supra. Lastly, under Maryland practice, the declaratory judgment action and the cross-claim are both permissive and not mandatory;

---

4. There the Court of Appeals of Maryland remarked:
"As hereinbefore set forth, although the original action against the appellee and appellant here was instituted on July 17, 1947, settlement of the three cases was not made by the appellee and releases secured until June 19, 1948, *when its right of contribution arose.*" [Emphasis supplied.]

5. Mr. Allen there sets forth the law:
Contribution and indemnity are derivative claims, or related or subsidiary claims, *contingent for their accrual only on the happening or finding of the following:* (1) lack of negligence of the injured person, (2) joint or several liability of both defendants in tort for the same injury, and (3) *satisfaction of the joint liability by payment of the whole or more than the pro rata share of the payor.* [Emphasis supplied.]

as to the possible actions for negligence or breach of warranty, the measure of damages would have been different from that relevant here and, as has been said, those actions are now barred.

There are a number of other points raised in the memorandum submitted by Texas, but they are not of sufficient merit to warrant the prolongation of this discussion. While many of these points are accurately and well made, they do not affect the determination of the precise issue before the court.

For the foregoing reasons, the first count of the complaint must be, and hereby is, dismissed; and the defendant's motion to dismiss the second count must be, and hereby is, denied.[6]

---

6. This decision is based, at least in part, upon a careful reading of Northwest Airlines v. Glenn L. Martin Co., supra. Of course, the decision there was reached on the basis of the law of Wisconsin and not the law of Maryland. But, it is abundantly clear that Judge Watkins had considered the Maryland cases on the subject and felt that they were in accord with his opinion. To this extent he charted the course we have now taken.